IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL STOKEY, | ) | CASE NO. 5:18-cv-01011 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| NORTH CANTON CITY SCHOOL DISTRICT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

This case is before the undersigned for a report and recommendation on Plaintiff Michael Stokey's ("Plaintiff" or "Stokey") motion for temporary restraining order ("TRO Motion") filed on May 2, 2018. (Doc. 3). Defendants filed a response to Plaintiff's TRO Motion on May 3, 2018 (Doc. 10).

For the reasons set forth herein, the undersigned recommends that the Court **GRANT in part and DENY in part** Plaintiff's TRO Motion. Specifically, the undersigned recommends that the Court **GRANT** the TRO Motion insofar as it seeks reinstatement of Plaintiff Stokey's son to the North Canton City School District's pole vault program. The undersigned recommends that the Court **DENY** the TRO Motion to the extent Stokey seeks to require Defendants to allow his son to participate in pole vault meets without complying with the directives and decisions of his coach, including directives with regard to practices. While Stokey has demonstrated a strong likelihood of success on the merits of his First Amendment retaliation claim and there is irreparable harm sufficient to warrant the award of injunctive relief, school officials, including coaches, have discretion to make and enforce decisions with respect to the administration of athletic programs.

1

## I. Background

The TRO Motion seeks to enjoin the North Canton City School District ("the District") from excluding Stokey's son, a high school student, from the pole vaulting athletic program at Hoover High School, including a twilight meet to be held on May 4, 2018, and several other meets to be held before the end of the current season. Stokey alleges that the District excluded his son from the pole vaulting program in retaliation for Stokey's exercise of his First Amendment rights. Doc. 1, Doc. 3. The pole vault program is part of Hoover High School's track and field team; Stokey's son currently participates in other track and field events. Doc. 1-2, p. 2, Doc. 10, p. 2

## II. Law & Analysis

### A.     Temporary Restraining Orders

When considering a TRO pursuant to Federal Rule of Civil Procedure 65, courts must determine whether a plaintiff has met his burden in establishing the following four factors: 1) whether the moving party has a strong likelihood of success on the merits; 2) whether the moving party will suffer irreparable harm unless injunctive relief is granted; 3) whether the requested relief will cause substantial harm to third parties; and 4) whether injunctive relief is in the public interest ("TRO factors"). *Northeast Ohio Coalition for Homeless and Service Employees Intern. Union v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009). "These factors are not prerequisites but, are factors that are to be balanced against each other." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Id.* (citing *Leary v. Daeschner,* 228 F.3d 729, 739 (6th Cir. 2000).

B.     **Application of TRO Factors**

   1.  **Likelihood of Success on the Merits**

In order to succeed on a First Amendment Retaliation claim, a plaintiff must demonstrate three elements. *Jenkins v. Rock Hill Local School Dist.*, 513 F.3d 580, 585-586 (6th Cir. 2008). A plaintiff must show that "(1) the plaintiff was engaged in a constitutionally protected activity; (2) the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; (3) and the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights." *Id.*

From April 5, 2018, through April 19, 2018, Stokey communicated to school officials regarding his concerns about safety issues related to pole vaulters being directed by their coach to jump in the rain during practices. Docs. 1-1 through Doc. 1-5. After some initial communications, Stokey was directed by a member of the school board to follow the "chain of command" by communicating first with the coach and then, in order, with the athletic director, the high school principal, the superintendent and, finally, with the board if the matter was not resolved. Doc. 1-3, p. 2. Stokey followed the board member's direction. After following the chain of command without success, he spoke with the board on April 18, 2018, and presented a proposed policy to address the concerns he raised. Docs. 1-1 through 1-5. The board considered but rejected Stokey's proposal. On April 19, 2018, Superintendent Jeff Wendorf emailed Stokey a letter in which he stated:

> After many written correspondences and face-to-face meetings, you have been very clear on the points you have made, including your continued concern regarding North Canton City School District's pole vault program and your lack of confidence and trust in our pole vault and track coaches. We have thoroughly investigated your allegation and find them to be unsubstantiated. We trust and support our

3

> coaches' judgment regarding practices and safety conditions, and we fully support our coaches as the only people who will determine athlete participating in competitions.
>
> <u>Due to your concerns and lack of trust in our coaches, your son, [ ], is restricted from participating in North Canton City School District's pole vault program or using any district pole vault equipment or facilities from this point forward.</u>

Doc. 1-6 ("Superintendent Wendorf's April 19, 2018, letter") (emphasis supplied).

Stokey argues that the Superintendent Wendorf's letter is proof of a First Amendment violation. Defendant contends, however, that this case should be controlled by *Lowery v. Euverard*, 497 F.3d 584 (6th Cir. 2007), which Defendants argue dictates a finding that Stokey has no likelihood of success on the merits. Doc. 10, pp. 3-5. However, *Lowery* is distinguishable. In *Lowery*, student athletes were sanctioned by being removed from their team for their own speech, which involved a petition, the ultimate purpose of which was to have the coach removed. 497 F.3d at 585. Here, by contrast, the Superintendent's letter shows that Stokey's son was removed from the pole vault program because of his father's speech, not his own speech. Thus, while *Lowery* did involve speech in the context of high school athletics, it is distinguishable and does not direct a finding that Stokey has no likelihood of success on the merits.

The undersigned finds that Stokey has a strong likelihood of success on the merits of his First Amendment retaliation claim. First, Stokey's speech was constitutionally protected. S*ee Jenkins*, 513 F.3d at 588 (parental speech about school officials is constitutionally protected whether or not it pertains to matters of public concern). Second, the Defendants' adverse action, i.e., removal of Stokey's son from the pole vault program, would likely chill a person of ordinary firmness from continuing to engage in the activity. *Id.* at 589; *see also Cain v. Tigard-Tualatin School Dist. 23J*, 262 F.Supp.2d 1120, 1130 (D. Oregon 2003) (finding that retaliating against a parent's child was a way in which a defendant could stifle a parent's speech). Third,

4

Superintendent Wendorf's April 19, 2018, letter evidences that the adverse action, removal of Stokey's son from the pole vault program, was motivated at least in part by Stokey's exercise of his First Amendment right to communicate his safety concerns regarding pole vaulting in the rain.

### 2. Irreparable Harm

Having shown that he has a strong likelihood of success on the merits of his First Amendment retaliation claim, Stokey has also met the irreparable harm prong of the test for injunctive relief. As stated by the Supreme Court, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 374 (1976); *see also Overstreet*, 305 F.3d at 578 ("[A] plaintiff can demonstrate that a denial of an injunction will cause irreparable harm if the claim is based upon a violation of the plaintiff's constitutional rights."); *Newsom v. Norris*, 888 F.2d 371, 378-379 (6th Cir. 1989) (relying on *Elrod* and indicating that "[t]he majority of federal circuit courts . . . have concluded that an individual who has been subjected to direct and intentional retaliation for having exercised the protected constitutional right of expression, continues to suffer irreparable injury even after termination of some tangible benefit . . .").

### 3. Harm to Third Parties

Stokey claims that the requested relief will cause no substantial harm to third parties. Doc. 3, pp. 8-9. Defendants challenge this assertion, arguing that there are other student-athletes on the track team who pole vault and could be harmed if a TRO is issued. Doc. 10, p. 6. They contend that other members of the track team attend practice and follow the coach's instructions and those team members could be displaced from meets should Stokey's son be reinstated to the program. Doc. 10, p. 6. Neither party has sufficiently supported its position as to this factor.

### 4. Public Interest

Plaintiff claims that injunctive relief is in the public interest because it "it will punish Wendorf and the District for retaliating against free speech . . . [and] will reverse the chilling effect to the community. North Canton residents and parents would not fear speaking out against District officials on policy matters." Doc. 3, p. 9. Defendants counter that the public interest will not be served by allowing parents to direct students to disobey school officials and then allege First Amendment violations to force the District to agree with the parents' preferences. Doc. 10, p. 6.

There is a public interest "in ensuring . . . protection of First Amendment liberties." *Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1490 (6th Cir. 1995). The undersigned also recognizes that "students do not have a general constitutional right to participate in extracurricular athletics." *Lowery*, 497 F.3d at 588. And discretion is afforded school officials in administering their athletic programs. "Unlike the classroom teacher whose primary role is to guide students through the discussion and debate of various viewpoints in a particular discipline, [the role of a coach] is to train his student athletes how to win on the court. The plays and strategies are seldom up for debate. Execution of the coach's will is paramount." *Id.* at 589 (internal citations omitted) (alterations in original).

### IV. Conclusion and Recommendation

In light of the foregoing, the undersigned concludes that injunctive relief is warranted. However, that relief should be narrowly tailored to account for the discretion afforded school officials in administering their athletic programs. Stokey, in his Affidavit and several Exhibits attached to his Complaint, makes clear that he has ordered his son not to practice in the rain despite any contrary instructions from his coach. Doc. 1-1, p. 1, ¶¶ 5-6, Doc. 1-3, pp., 2, 3.

While Stokey is free to order his son not to practice and while his son is free to disobey his coach's order to practice, neither Stokey nor his son should be insulated from the consequences of their decisions.

Accordingly, the undersigned recommends that the Court **GRANT in part and DENY in part** Plaintiff's Motion for Temporary Restraining Order (Doc. 3). More specifically, the undersigned recommends that the Court order Stokey's son reinstated to the North Canton City School District's pole vault program but deny Stokey's Motion to the extent it seeks to require the Defendants to allow his son to compete despite his failure or refusal to obey the directions of his coach. Decisions as to how and when team members practice and/or whether a student who is a pole vault program participant will actually compete in meets are within the coach's discretion. *See Lowery*, 497 F.3d at 589 ("[T]he immediate goal of an athletic team is to win the game, and the coach determines how best to obtain that goal.").

Generally a court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." *See Appalachian Regional Healthcare, Inc. v. Coventry Health and Life Ins. Co.*, 714 F.3d 424, 431 (6th Cir. 2013) (quoting Fed. R. Civ. P. 65(c)). As stated in *Appalachian Regional Healthcare, Inc.*, "[w]hile this language appears to be mandatory, 'the rule in our circuit has long been that the district court possesses discretion over *whether* to require the posting of security.'" 714 F.3d at 431 (internal citations omitted) (emphasis in original). The undersigned recommends Plaintiff not be required to post security in this case since there has been no indication that preserving the status quo, which is the intent of

the recommended injunctive relief, will result in costs or damages to the Defendants.

Dated: May 4, 2018

Kathleen B. Burke
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).